The Clare Company, a corporation, v. Commissioner.
Clare Co. v. Commissioner
Docket No. 3556-68.
United States Tax Court
T.C. Memo 1969-264; 1969 Tax Ct. Memo LEXIS 31; 28 T.C.M. (CCH) 1348; T.C.M. (RIA) 69264; December 9, 1969, Filed Ralph Bohannon and Herbert G. Underwood, 10th Floor, Union Bank Bldg. , Clarksburg, West Va., for the petitioner. Rodney G. Haworth, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income taxes for the taxable years 1960 and 1961 in the amounts of $30,969 and $15,346.25, respectively. The only issue for decision is whether section 382(a), I.R.C. 1954, precludes the 1349 deduction in 1960 and 1961 of net operating loss *32 carryovers, resulting from losses sustained in taxable years 1956, 1957, and 1958, in the amounts of $115,793.24 and $41,875.15, respectively. Findings of Fact Some of the facts have been stipulated by the parties. The stipulation and exhibits attached thereto are incorporated herein by this reference. The Clare Company (hereinafter referred to as petitioner) is a corporation organized under the laws of West Virginia with its principal place of business in Parkersburg, West Virginia at the time the petition herein was filed. Petitioner is the successor to George Vang, Inc. (hereinafter referred to as Vang) and is primarily liable for any deficiencies in Vang's Federal income tax for the years 1960 and 1961. Vang filed its Federal income tax returns for the taxable years in question with the district director of internal revenue, Parkersburg, West Virginia. Vang was incorporated under the laws of Pennsylvania in 1934 and as stated in its charter was incorporated for the purposes of: Conducting and carrying on the business of builders and constructors and contractors, the contracting for, performing and doing all kinds of public and private work. On December 16, 1959, B. *33 P. and Alma McDonough were issued stock certificate No. 22 for 3,450 shares of Vang stock. On January 8, 1960, certificate No. 23 for 350 shares was also issued to the McDonoughs. These two transactions involved all the outstanding stock of Vang. The price per share was approximately $56.58 for the entire 3,800 shares. On February 17, 1960, Vang redeemed 1,000 shares from the McDonoughs for $56,578.95. Such redemption has been taxed and treated as a dividend. These transactions resulted in the McDonoughs acquiring more than 50 percentage points of the fair market value of Vang's outstanding stock between the beginning of 1959 and the end of 1960. Prior to the sale of stock to the McDonoughs, Vang was engaged in the construction business. Its assets consisted of steam and diesel crawler cranes, pumps, drills, pile drivers, extractors, and small hand and power tools. These were used in the following construction activities: pile driving, railroad bridge work, bridge and building substructure work, and other general contracting work of a similar nature. As a natural concomitant of this construction work, Vang would rent out equipment which would not be in use at a particular time. *34 During the taxable years 1955 through August 31, 1963, Vang reported gross construction and rental income on its tax returns as follows: Year
Total GrossIncome
GrossConstruc- tion Income
Percent of Gross Income
Gross RentalIncome
Percent of Gross Income
1955
$189,581
$165,865
87
$ 23,716
13
1956
344,120
317,364
92
26,756
8
1957
241,775
207,643
86
34,132
14
1958
64,081
44,759
70
19,322
30
1959
436,449
426,629
98
9,820
2
1960
144,633
* 15,078
11
129,555
89
1961
154,203
0
0
154,203
100
1962
165,699
** 3,689
2
162,010
98
1963
149,635
0
0
*** 149,635
100
(8-31)
*35 1350 On March 27, 1960, Vang sold all of its construction equipment and realized a gain of $125,206.88. Beginning in January of 1960 and continuing through the end of December 1963, Vang acquired numerous river barges as follows: Year
Purchased
Sold
Balance Endof Year
1960
$595,700.00
$24,500
$571,200.00
1961
65,000.00
23,450
612,750.00
1962
278,185.92
6,000
884,935.92
1963 0
6,000 878,935.92 $938,885.92
$59,950
These barges were the only assets of Vang after the sale of its construction equipment. Vang's income during 1960 and 1961 was derived almost entirely from rental of these barges. Vang had never owned any river barges prior to the sale of all its assets in 1960. During the years 1956, 1957, and 1958, Vang incurred net operating losses in its construction business. In 1960, it had $157,668.39 of net operating losses available for carryover. It used $115,793.24 of such losses in 1960 and $41,875.15 in 1961. The Commissioner disallowed both these deductions, thereby giving rise to the deficiencies herein. Opinion The only issue for decision is whether Vang is allowed to avail itself of net operating loss carryovers *36 for 1960 and 1961 under section 382(a), [1] I.R.C. 1954. [2] The parties do not dispute the fact that the stock transfers of 1959 and 1960 fall within the provisions of sections 382(a)(1)(A) and 382(a)(1)(B). However, the parties do take issue over the application of section 382(a) (1)(C), i. e., whether Vang, at the end of 1960, continued to carry on a trade or business substantially the same as that conducted before the change in its stock ownership. *37 Petitioner contends that the sale of Vang's operating assets, and events subsequent thereto, did not effect a change in business as specified in the statute because Vang intended to carry on the construction business with rented equipment and further that the purchase and rental of river barges was not a different business than Vang had been engaged in before the stock transactions because prior to the sale of all its operating assets Vang was also engaged in the rental business and the purchase of barges held for rental was merely an expansion of this already existing business. Respondent contends, first that Vang was engaged exclusively in the construction business before the sale of all its operating assets and that its rental activities were not a separate business but rather were incidental to the construction business and that after the change in stock ownership, Vang was solely engaged in the rental business; or second that if Vang was engaged in the rental business both before and after the change in its stock ownership, such activity after the change was not substantially similar to that existing before the change as required by section 382(a). We agree with the respondent's *38 first contention and therefore do not reach the second and disallow Vang's claimed net operating loss deductions for 1960 and 1961. As stated in section 382(a), the crucial time to view the facts herein is at the end of 1960. Prior to the sale of all its assets, Vang derived its income primarily from the construction business. At no time did its gross rental income exceed 30 percent of its total gross income, in fact for the years 1351 1955 through 1959 gross rental income averaged 13 percent of total gross income. There is testimony in the record to the effect that the rental activities were carried on as a natural concomitant of the construction business, that is, equipment not in use was rented so as to maximize profits. There is further testimony that such rental activity is natural in the construction business. However there is no testimony or other evidence showing that any assets were purchased exclusively for rental or that the rental business was contemplated at the formation of Vang. In fact the corporate charter is silent as to a rental business. Therefore, it is our conclusion and we so find that Vang was engaged solely in the construction business prior to the *39 stock transfers of 1959 and 1960. Looking at the end of 1960, in what business was Vang then engaged? Petitioner contends that Vang was still in the construction business. Respondent contends Vang was solely in the rental business. We agree with respondent. Petitioner claims that Vang intended to remain in the construction business after the sale of all its assets by using rented equipment. However, as of the end of 1960, Vang was not in fact engaged in any construction work. Further, from the time of the sale of all its assets until the end of 1960, Vang bid on only nine projects, all of which were unsuccessful and none of which were bid on after August. In addition, from the beginning of 1961 through October 1963, Vang only bid on three additional projects, again none of which were successful. Petitioner contends that Vang "continued to be a viable corporation, ready, willing and able and attempting to conduct the same type of business it was engaged in prior to the change in stock ownership." That may be true, but the facts are otherwise. By the end of 1960, Vang had acquired $571,200 worth of river barges which it rented and yielded a gross income of $129,555. This represented *40 89 percent of its total gross income for 1960. The remaining 11 percent of its gross income, attributable to construction work, was predominantly for work begun before 1960. We find it hard to believe that a corporation claiming to be in the construction business could not be successful on at least one bid during a nine-month period or would not even make a bid over a four-month period. In this connection see Euclid-Tennessee, Inc., 41 T.C. 752 (1964), affd. 352 F. 2d 991 (C.A. 6, 1965), certiorari denied 384 U.S. 940 (1966), wherein we stated: * * * the most reasonable and logical interpretation of the phrase "continued to carry on a trade or business substantially the same," as used in this statutory context, means the active business, * * * which actually incurred the losses. The continuation must be actual, as shown by objective facts, and not subjective. Since we have determined that Vang was in the construction business prior to the change in its ownership, it follows that some form of construction business was required to be actually continued after the change. This recognizes that some changes in the conduct of the business *41 are permissible, Goodwyn Crockery Co., 37 T.C. 355 (1961), affd. 315 F. 2d 110 (C.A. 6, 1963), as long as the same type of business continues. H.F. Ramsey Co., 43 T.C. 500 (1965). However, when there is a "real change in the type of business conducted," H.F. Ramsey Co., supra, section 382(a) becomes operative and denies the use of net operating loss carryovers. We find that at the end of 1960, the objective facts show that Vang was no longer in the construction business, but rather had embarked on an entirely new line of endeavor, the rental business. Thusly section 382(a) is triggered and accordingly, Decision will be entered for the respondent. Footnotes
*. This total was comprised of job costs of $13,348.78 and a gross profit of $1,729.43. $3,504.20 of the job costs related to work done during November and December of 1960. The balance of $9,844.58 related to construction in process prior to January 1, 1960. ↩
**. These receipts were based upon the following described transactions: ↩
April 18, 1962 Received checks for account from Sanctis Construc- tion Company
$2,625.25
June 7, 1962 Armstrong Steel Erectors, setting steel-Hocking River-Kanawha Sand #7963 1,063.75
Total
$3,689.00
Less: Inter-company credit 868.25
Gross profit $2,820.75
***. Additional gross rentals in the amount of $88,026.33 were received for the period September 1, 1963 to December 31, 1963.↩
1. SEC. 382. SPECIAL LIMITATIONS ON NET OPERATING LOSS CARRYOVERS. (a) Purchase of a Corporation and Change in Its Trade or Business. - (1) In general. - If, at the end of a taxable year of a corporation - (A) any one or more of those persons described in paragraph (2) own a percentage of the total fair market value of the outstanding stock of such corporation which is at least 50 percentage points more than such person or persons owned at - (i) the beginning of such taxable year, or (ii) the beginning of the prior taxable year, (B) the increase in percentage points at the end of such taxable year is attributable to - (i) a purchase by such person or persons of such stock, the stock of another corporation owning stock in such corporation, or an interest in a partnership or trust owning stock in such corporation, or (ii) a decrease in the amount of such stock outstanding or the amount of stock outstanding of another corporation owning stock in such corporation, except a decrease resulting from a redemption to pay death taxes to which section 303 applies, and (C) such corporation has not continued to carry on a trade or business substantially the same as that conducted before any change in the percentage ownership of the fair market value of such stock, the net operating loss carryover, if any, from prior taxable years of such corporation to such taxable year and subsequent taxable years shall not be included in the net operating loss deduction for such taxable year and subsequent taxable years. * * * ↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩